# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISON

| | | |
|---|---|---|
| **CATHY HUFFINGTON HALL,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| **WILLIAM YARBROUGH III** | § | **CIVIL ACTION NO. 3:25-cv-2380** |
| | § | |
| *Defendant*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE:

COMES NOW, Plaintiff Cathy Huffington Hall, complaining of Defendant William Yarbrough III, and for causes of action will respectfully show unto the Court as follows:

## SUMMARY

On July 3, 2024, Cathy Huffington Hall a sixty-nine-year-old woman, attended a Fourth of July celebration at Brookhaven Country Club with companions. Ms. Hall and her companions continued their evening at the Farmers Branch Historical Park to watch fireworks. While parked on a private road after the event, she was approached by police, including Officer William Yarbrough with the Farmers Branch Police Department. Yarbrough asked if Ms. Hall had been drinking and instructed her to exit her vehicle. Ms. Hall showed no signs of intoxication as she had normal use of mental and physical facilities and had an alcohol concentration of 0.0, had no alcohol in her vehicle, admitted to having only having a "little bit of a [white] claw" clearly enough to not present signs of intoxication, and cooperated fully by exiting her vehicle as instructed.

Additionally, Ms. Hall passed two standard field sobriety tests that Yarbrough administered. Despite this Yarbrough falsely arrested Ms. Hall for Driving While Intoxicated. Ms. Hall was taken into custody at the Farmers Branch Jail. She was released approximately four hours

later after her breathalyzer test came back with a reading of a 0.0. However, as a result of her illegal arrest Ms. Hall suffered injuries, including emotional distress, torment, mental anguish, and deprivation of her liberty when taken into custody. Ms. Hall now files suit against William Yarbrough III for violation of her constitutional rights under the Fourth Amendment to the United States Constitution to be free from false arrest.

## I.
## PARTIES

1. Plaintiff Cathy Huffington Hall is a resident of Dallas County, Texas.

2. Defendant William Yarbrough is an individual residing in Dallas County, Texas, and at all relevant times was a police officer with the Farmers Branch Police Department and may be served at his place of employment at the Farmers Branch Police Department located at 3723 Valley View Ln, 75244, or wherever he may be found. Defendant Yarbrough is being sued in his individual capacity.

## II.
## JURISDICTION AND VENUE

3. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

4. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because the Defendant resides in the Northern District of Texas and the cause of action accrued in the Northern District of Texas.

## III.
## FACTS AND ALLEGATIONS

5. On July 3, 2024, Plaintiff Cathy Huffington Hall a sixty-nine-year-old woman had her constitutional rights violated when Officer William Yarbrough unlawfully arrested Ms. Hall for Driving While Intoxicated.

6.     On July 3, 2024, Cathy Huffington Hall watched fireworks with companions Mary and Courtney for a Fourth of July celebration at the Brookhaven Country Club.

7.     Ms. Hall and her companions continued their evening at the Farmers Branch Historical Park to watch fireworks.

8.     Upon driving away toward the conclusion of the event, a woman on a golf cart approached Ms. Hall and informed her that she was not on a public road.

9.     Ms. Hall stated she could turn around and drive back in the direction she had just come from.

10.     The woman on the golf cart informed Ms. Hall she could not turn around as there was now a barricade in the direction Ms. Hall had come from and that it would take an hour to remove tents that were blocking the other end of the road.

11.     Ms. Hall was parked with her car off during this conversation and she was not blocking any traffic as she was in the only car on the road.

12.     Suddenly Officer William Yarbrough, along with other officers with the Farmers Branch Police Department arrived and asked Ms. Hall if she had been drinking.

13.     Ms. Hall informed Yarbrough that she had not had only a "little bit of a [white] claw."

14.     During the traffic stop, Ms. Hall did not exhibit any signs of intoxication as she had normal use of mental and physical facilities and had an alcohol concentration of 0.0.

15.     Ms. Hall had no alcohol in her vehicle.

16.     Ms. Hall admitted to having only having a "little bit of a [white] claw" clearly enough to not present signs of intoxication.

17.      Yarbrough instructed Ms. Hall to get out of her vehicle.

18.     Ms. Hall complied with Yarbrough's instruction to get out of her vehicle.

19.     Yarbrough asked Ms. Hall if she had a gun.

20.     Ms. Hall responded that she did not have a gun with her and offered to let Yarbrough search her vehicle.

21.     Yarbrough did not search Ms. Hall's vehicle and instead made Ms. Hall complete standard field sobriety tests.

22.     Ms. Hall was informed that she passed both the horizontal gaze nystagmus and walk-and-turn portions of the standard field sobriety test.

23.     Ms. Hall did not exhibit any signs of intoxication as she had normal use of mental and physical facilities and had an alcohol concentration of 0.0.

24.     At no point did Defendant witness Ms. Hall consume alcohol.

25.     At no point did Ms. Hall have glossy, watery eyes, or slurred speech.

26.     At no point did Ms. Hall commit any traffic violations, as she was simply driving on a private drive, which unbeknownst to her, had been closed off for the event.

27.     At no point was Ms. Hall loud, belligerent, or hostile.

28.     Accordingly, Yarbrough falsely arrested Ms. Hall for Driving While Intoxicated although Ms. Hall was not obstructing traffic, had her car turned off, showed no signs of intoxication as she had normal use of mental and physical facilities and had an alcohol concentration of 0.0, had no alcohol in her vehicle, admitted to having only having a "little bit of a [white] claw" clearly enough to not present signs of intoxication, and cooperated fully by exiting her vehicle as instructed.

29.     Ms. Hall was transported to the Farmers Branch Jail.

30.     Ms. Hall was released approximately four hours later after her breathalyzer test came back with a reading of a 0.0. indicating no presence of alcohol.

31.     Charges were not pursued against Ms. Hall, as she had not committed any crime.

32.     As a result of her illegal arrest Ms. Hall suffered injuries, including emotional distress, torment, and mental anguish, and deprivation of her liberty when taken into custody.

33.     At all times Defendant Yarbrough was acting under the color of law as he was on duty, in full uniform, utilizing his patrol vehicle, and arrested Ms. Hall.

**IV.**
**CAUSES OF ACTION**

**Count One**

**Unlawful Arrest**
**Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983**
**Against Defendant Yarbrough**

34.     Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

35.     No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. *Terry v. Ohio*, 392 U.S. 1, 9 (1968).

36.     A false arrest claim under 42 U.S.C. § 1983 requires a showing of (1) willful detention, (2) without consent, (3) without authority of law, and (4) the deprivation of a constitutional right.

37.     There is no cause of action for false arrest under § 1983 unless the arresting officer lacked probable cause.

38.    There can be no doubt that the right not to be arrested absent probable cause was clearly established at the time of Ms. Hall's arrest. *Alexander v. City of Round Rock*, 854 F.3d 298, 306–07 (5th Cir. 2017).

39.    To determine the presence or absence of probable cause, the totality of the circumstances surrounding the arrest must be considered.

40.    Ms. Hall was arrested for Driving While Intoxicated.

41.    Although charges were not pursued against her she was taken into custody and spent approximately four hours in jail.

42.    Here, Ms. Hall did not commit the offense of Driving While Intoxicated.

43.    Under Texas law, the elements that must be shown to establish DWI are "that the defendant operated a motor vehicle in a public place while intoxicated." *Do v. State*, 634 S.W.3d 883, 888 (Tex. Ct. Crim. App. 2021)

44.    "Intoxicated" is defined as "either (1) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, or (2) having an alcohol concentration of .08 or more." *Do,* 634 S.W.3d at 888.

45.    Ms. Hall was not operating a motor vehicle as she parked, not obstructing traffic and had her car turned off when Yarbrough began the interaction with her.

46.    During the traffic stop, Ms. Hall did not exhibit any signs of intoxication as she had normal use of mental and physical facilities and had an alcohol concentration of 0.0.

47.    At no point did Defendant witness Ms. Hall consume alcohol.

48.    At no point did Ms. Hall have glossy, watery eyes, or slurred speech.

49.    At no point did Ms. Hall commit any traffic violations, as she was simply driving on a private drive, which unbeknownst to her, had been closed off for the event.

50.    At no point was Ms. Hall loud, belligerent, or hostile.

51.    Yarbrough falsely arrested Ms. Hall for Driving While Intoxicated although Ms. Hall was not obstructing traffic, had her car turned off, showed no signs of intoxication as she had normal use of mental and physical facilities and had an alcohol concentration of 0.0, had no alcohol in her vehicle, admitted to having only having a "little bit of a [white] claw" clearly enough to not present signs of intoxication, and cooperated fully by exiting her vehicle as instructed.

52.    According to the Court in *Rios*:

"Here, the parties dispute the circumstances leading up to Lara and Flores detaining Rios. Lara and Flores state that Rios displayed intoxicated behavior: that he had difficulty standing, spoke with slurred speech, and that he was loud and disruptive and "howl[ed] like a wild animal." Lara Decl. 1; Flores Decl. 1–2; Nov. 24 Incident Report 2. The Officers' statements also indicate that Rios obstructed traffic and that he was playing with construction equipment and sandbags by the sidewalk. Lara Decl. 1; Flores Decl. 1–2; Nov. 24 Incident Report 2. For their part, Rios and Tullos testify that Rios did not obstruct traffic, nor did he fall to the ground or act erratically. Rios Aff. ¶¶ 2–3; Tullos Aff. ¶ 4. Flores's body camera footage of this incident begins when Lara and Flores approach Rios and Tullos, and it therefore does not capture any of the behavior that Lara and Flores testify preceded their detaining him. See generally Flores Bodycam Footage. Thus, simply put, there is a genuine dispute of material fact as to whether Rios was acting so erratically as to give the Officers probable cause to arrest him for public intoxication. *See, e.g. Howard v. Forrest County*, No. 19-cv-84, 2020 WL 4506787, at *4 (S.D. Miss. Aug. 5, 2020) (conflicting testimony presented genuine dispute of material fact as to whether there was probable cause for arrest that precluded summary judgment on false arrest claim); *Graham v. Dallas Area Rapid Transit*, 288 F. Supp. 3d 711, 739 (N.D. Tex. 2017) (same)."

*See Rios v. Perez*, No. SA-23-CV-1310-KC, 2021 WL 12337153, at *6 (W.D. Tex. Mar. 31, 2025)

53.    According to the court in *Carter*:

"After Chris Smith allegedly passed Myers' sobriety test, his arrest for driving under the influence lacked probable cause. Plaintiffs and Defendants disagree over whether Myers concluded from the sobriety tests he conducted at the scene that Chris Smith was legally drunk. In a Rule 12(b)(6) review, however. the Court must construe the complaint in favor of Plaintiffs, who allege that Stacey Smith and Myers plotted to "get" Stacey Smith's estranged husband and who contend that the sobriety test showed that Chris Smith was not drunk, but that Myers nevertheless

subjected him to a physical search, pointed his gun at Chris Smith's face, arrested him for Driving Under the Influence, and took him to jail. Thus while Myers' initial stop of Chris Smith might have been reasonable in the eyes of a reasonable policeman in the same situation as Myers even if he had been told by Stacey Smith that Chris Smith drinks and drives, under the facts alleged after Chris Smith passed the sobriety test Myers had no probable cause to search, threaten Chris Smith with a firearm, and arrest him, thus undermining Myers' qualified immunity defense."

*Carter v. Diamond URS Huntsville*, LLC, 175 F. Supp. 3d 711, 755 (S.D. Tex. 2016).

54.     Due to her false arrest, Ms. Hall spent approximately four hours in jail.

55.     Defendant Yarbrough intentionally arrested Ms. Hall by restraining her in handcuffs and later confining her in the back of a police car, without a warrant, without her consent, and without any legal justification.

56.     Ms. Hall did not consent to her restraint or confinement and was conscious of both.

57.     Defendant Yarbrough willfully arrested Ms. Hall by restraining Ms. Hall in handcuffs and later in a patrol vehicle where she was transported to jail.

58.     Defendant Yarbrough did not have the authority of law to arrest Ms. Hall as he did not have a warrant or probable cause to arrest her, and no other exigent circumstances existed justifying arrest.

59.     Defendant Yarbrough deprived Ms. Hall of her constitutionally protected right to be free from unreasonable seizures under the Fourth Amendment by unlawfully arresting her despite lacking probable that any crime had been committed as Defendant did not have probable cause that a crime had been committed by Ms. Hall.

60.     By knowingly and intentionally arresting Ms. Hall without consent, without probable cause, and without legal justification, Defendant Yarbrough deprived Ms. Hall of her Fourth Amendment right to be free from unreasonable seizures.

61. As a result of the illegal arrest, Defendant Yarbrough deprived Ms. Hall of her civil, constitutional, and statutory rights and is liable pursuant to 42 U.S.C. § 1983.

62. At all times relevant to this lawsuit, Defendant Yarbrough was acting under color of law as he was on duty, in full uniform, and utilizing this patrol vehicle.

## V.
## PUNITIVE DAMAGES

63. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

64. When viewed objectively from the standpoint of Defendant Yarbrough at the time of the occurrence, Defendant's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

65. As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by Defendant Yarbrough which was recklessly or callously indifferent to Ms. Hall's constitutionally protected rights, Ms. Hall is entitled to recover punitive damages in an amount within the jurisdictional limits of this Court.

## VI.
## DAMAGES

66. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

67. Plaintiff's injuries were a foreseeable event.

68. Plaintiff's injuries were directly and proximately caused by her unlawful arrest by Defendant Yarbrough.

69. As a result, Plaintiff is entitled to recover all actual damages allowed by law. Plaintiff contends Defendant Yarbrough's conduct constitutes malice, evil intent, or reckless or

callous indifference to her federally protected rights. Thus, Plaintiff is entitled to punitive damages against Defendant.

70.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

a.   Emotional distress, torment, and mental anguish; and
b.   Deprivation of her liberty.

71.    Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff seeks to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VII.
## ATTORNEY'S FEES

72.    If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## VIII.
## JURY REQUEST

73.    Plaintiff respectfully requests a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendant, in an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which she may show herself justly entitled.

Respectfully submitted,

*/s/ Breanta Boss*
BREANTA BOSS,
Texas Bar No. 24115768

*/s/ James P. Roberts*
JAMES P. ROBERTS,
Texas Bar No. 24105721

*/s/ Scott H. Palmer*
SCOTT H. PALMER,
Texas Bar No. 00797196

PALMER PERLSTEIN
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
james@palmerperlstein.com
breanta@palmerperlstein.com
scott@palmerperlstein.com

**COUNSEL FOR PLAINTIFF**